UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-62220-CIV-COHN-SELTZER

RAYMOND HENRY STARKES, III,

       Plaintiff,

v.

JACK B. FLECHNER, ESQUIRE,
ILENE FLECHNER, GREG FEIT,
PAMELA FEIT, CANE BURGERS, LLC,
CANE BURGERS II, LLC, *et. al.*,

       Defendants.

_____/

### WIVES' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

Defendants, Ilene Flechner and Pamela Feit, ("Wives" or "Defendants") move, pursuant to Federal Rules of Civil Procedure 8(a)(2), 8(d)(1), 10(b), and 12(b)(6), to dismiss Plaintiff's Second Amended Complaint [D.E. 95] on the grounds that the Second Amended Complaint fails to state a claim upon which relief can be granted. In support of their motion, Wives state:

### I. BACKGROUND

1.    Plaintiff, Raymond Henry Starkes, III, filed this action on October 14, 2012.

2.    Plaintiff sued Defendants, Jack Flechner ("Flechner"), Greg Feit ("Feit") (sometimes collectively referred to as "Husbands"), Cane Burgers, LLC (Cane I),

Cane Burgers II, LLC ("Cane II"), Burger Biz, LLC, and numerous other corporate defendants (collectively, the "LLC Defendants").

3.      On December 27, 2012, Plaintiff filed a First Amended Complaint. ("FAC").   Once the Defendants' Motions to Dismiss FAC became fully briefed, Plaintiff then filed a Motion for Appropriate Relief [D.E. 65] and an accompanying Notice of Lack of Claims against Wives [D.E. 64] asserting, *inter alia*, that neither the Court nor the Plaintiff had caught the fact that FAC failed to make any claims against Wives. [D.E. 64].

4.      The Court granted the Defendants' Motions to Dismiss, in part; granted Defendants' Motions for More Definite Statement, and granted Plaintiff leave to file a Second Amended Complaint ("SAC"). [D.E. 74].

5.      The core factual allegations upon which SAC claims rest are not complex.  Distilled to their essence, Plaintiff asserts that he was a 25% owner of Cane I, a Five Guys franchisee. [D.E. 95, ¶61]. Plaintiff's membership interest was reduced by 17.2%, [D.E. 95, ¶114]. The 17.2% is alleged to have been converted *"by Feit and Flechner, who included the "Wives as recipients of* [Plaintiff's] *membership interests."* [D.E. 95, FF].   Thereafter, it is asserted that Feit and Flechner, and/or the Wives engaged in a variety of wrongs, including *"breaches of fiduciary duty by Feit and Flechner … unfair dealing and improper diversion of funds, property and other assets, and the misappropriation of business opportunities."* [D.E. 95, ¶21].

II.   **MEMORANDUM OF LAW**

A.   **Pleading  Standards**

6.   In its order dismissing FAC [D.E. 74] the Court set forth the pleading standards.  For purposes of brevity, Wives do not repeat the pleading standards.

B.   **The SAC Impermissibly Incorporates Multiple Claims Into Single Counts  (A Shotgun Pleading) And  Violates Rules 8 and 10**

7.   FAC incorporated 95 paragraphs of disparate factual allegations into each and every count. *"[T]he Court strongly suggest[ed] that in drafting the Second Amended Complaint, Plaintiff consider only incorporating those factual allegations relevant to the particular claim into each separate count."* [D.E. 74].[1]

8.   SAC declined to adopt this strong "suggestion."  SAC has become more unwieldy and more confusing. Each of the twelve counts in SAC still sweepingly incorporate all 95 paragraphs of factual allegations. While many of the numbered paragraphs have been deleted, Plaintiff has replaced numbered paragraphs with a series of letters, A – N, inclusive of 22 new sub-paragraphs.

---

[1] Federal Rule of Civil Procedure 8(d)(1) requires that "[e]ach allegation must be simple, concise and direct." Moreover, "Federal Rule of Civil Procedure 10(b) requires that the averments of a claim 'shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances ... [and][e]ach claim found upon a separate transaction or occurrence ... shall be stated in a separate count.' *Fed.R.Civ.P. 10(b).* These rules, working together, require a plaintiff 'to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading' and allow the court to determine which facts supported which claims and whether the plaintiff had stated any claims upon which relief can be granted." *Washington v. Bauer*, 149 Fed.Appx. 867 (11th Cir. 2005)(*quoting Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996).

9.     Plaintiff inserts a new section into SAC titled "Demand." [D.E. 95, pages 6 – 9]. SAC impermissibly combines multiple claims into a single Count, by incorporating prior Counts.[2]

10.     The Eleventh Circuit Court of Appeals has repeatedly denounced such pleadings. *See Thompson v. Relation Serve Media, Inc.*, 610 F.3d 628, 650 n.22 (11th Cir. 2010)(and cases cited therein); *PVC Windoors, Inc. v. Babbitbay Beach Const.*, N.V., 598 F.3d 802, 806 n.4 (11th Cir. 2010).  Shotgun pleadings such as SAC have also been condemned by this Court. *See Jovine v. Abbott Laboratories, Inc.,* 2011 WL 1376029 (S.D.Fla. 2011)(Cohn, J); *Ingraham v. Miami-Dade County Corrections and Rehabilitations Dept.*, 2010 WL 3359445 (S.D. Fla. 2010).

11.     SAC continues to liberally make references to prior Maryland litigation between Plaintiff, Feit, and Flechner, [D.E. 95 ¶¶121 -123, 152 – 155, 159, and footnote 2] which allegations have little, or nothing, to do with the present claims. The Court did more than simply *"strongly suggest"* that in re-pleading SAC, that

---

[2] In some instances, two claims are incorporated into a single count. In some instances three claims are incorporated into a single count. And, in the instance of Count IV, for an Accounting, four claims are incorporated into a single count. Count I-A, (Derivative Misappropriation by Wives) incorporates Count I, (Derivative Misappropriation by Husbands); Count II (Derivative Fiduciary Duty) incorporates Count I (Derivative Misappropriation). Count III (Derivative Civil Conspiracy by Husbands) incorporates Count I (Derivative Misappropriation by Husbands) and Count II (Derivative Fiduciary Duty). Count III-A (Derivative Civil Conspiracy – Wives), incorporates Count III (Derivative Civil Conspiracy – Husbands). Count IV (Derivative Accounting) incorporates Count I (Derivative Misappropriation); Count II (Derivative Fiduciary Duty); and Count III (Derivative Conspiracy). Count V-A (Direct Conversion – Wives) incorporates Count V (Direct Conversion – Husbands). Count VII-A (Direct Conspiracy – Wives) incorporates Count VII (Direct Conspiracy – Husbands).

SAC not include these allegations. ("*This Court does agree with Defendants that allegations regarding the Maryland litigation have little to do with the claims in this action … in re-pleading his claims, Plaintiff should only include relevant allegations.*") [D.E. 74].

### C.   Derivative Claims Must Be Verified To Avoid Dismissal

12.     Florida §608.601(2) requires that *"a complaint in a proceeding brought in the right of a limited liability company <u>must be verified</u> …"* Rule 23.1, likewise, states that a derivative complaint "<u>must</u>" be verified.

13.     SAC is not verified. Plaintiff has not signed SAC. [D.E. 95, page 32]. Instead, above Plaintiff's typed name, there simply appears a typed "/s/".

14.     When a court finds that a complaint in a derivative action lacks a valid verification, dismissal is appropriate under Rule 41(b). *Johnson v. Brandon Corp.*, C.A. 4th, 1950, 183 F.2d 444; *Moore v. Panama Ice & Fish Co.*, C.C. A.5th, 1936, 81 F.2d 837,839.

### D. Before Filing A Derivative Claim, Plaintiff Must Make A Proper Demand *And* That Demand Must Be Refused Or Ignored By The LLC – A Demand Made After Filing Suit Is A Nullity[3]

18.     Florida Statute § 608.601(2) requires that the Plaintiff *"allege with particularity the demand made to obtain action by the managing members of a member-managed company … **and** that the demand was refused or ignored."*[4]

19.     The requirement that a shareholder make demand upon a corporation's directors in a derivative suit is not merely a technical pleading hurdle, but rather is based on a fundamental tenet of American corporate law that responsibility for corporate decisions is in the hands of a board of directors, and only when shareholders show that directors cannot or will not exercise that power is deviance justified. *Johnson v. Hui*, N.D.Cal.1990, 752 F.Supp. 909. The policy underlying this requirement is that federal courts should not intervene in the internal affairs of private corporations, nor sanction interference by shareholders unless it is clear that the board of directors has no intention of taking appropriate action. *Laufer v. Olla Industries, Inc.*, S.D.N.Y.1982, 96 F.R.D. 230. The demand

---

[3] In contrast to a motion to dismiss for failure to state a claim, a motion to dismiss a shareholder derivative action for failure to make a proper demand on the board of directors is not intended to test the legal sufficiency of the plaintiff's substantive claim; rather, its purpose is to determine who is entitled, as between the corporation and its shareholders, to assert the plaintiff's underlying substantive claim on the corporation's behalf. *In re Veeco Instruments, Inc. Securities Litigation*, S.D.N.Y.2006, 434 F.Supp.2d 267.

[4] A derivative claim must assert, *inter alia*, the wrongful refusal by a corporation to seek redress for an injury. James Talcott, Inc. v. McDowell, 148 So. 2d 36 (Fla. Dist. Ct. App. 3d Dist. 1962).

6

requirement, as a prerequisite to a shareholder's derivative suit, is essentially a requirement that the shareholder exhaust his intracorporate remedies. *Evangelist v. Fidelity Management & Research Co.*, D.C.Mass.1982, 554 F.Supp. 87.

20.     This Court, in granting the Defendants' Motions to Dismiss FAC, ruled as inadequate, Plaintiff's vague allegation that he *"made repeated demands on Feit and Flechner, individually and collectively, concerning …* [Cane I]; *however, the previous demands were ignored …"* [D.E. 74].

21.     The Court provided guidance for curing this deficiency. The Court stated *"… Plaintiff has not alleged when and in what form he attempted to demand actions …Plaintiff has failed to meet the procedural requirements of ¶608.601(2). Such allegations need to be included in any amended complaint."* [D.E. 74].

22.     SAC attempts to cure the defect of a lack of proper *pre-suit* demand by creating a *post-suit* demand. The attempted cure is a March 12, 2012 letter ("Demand Letter") served on defense counsel, and not on the Members or management.[5] [D.E. 95, Exhibit A, pages 2-3]. The Demand Letter makes various demands, not just on Cane I, but on all of the other LLCs, in which Plaintiff has no membership interest. The Demand Letter includes matters entirely unrelated to a

---

[5] It is insufficient to serve the pre-suit demand on counsel for company, even if general counsel. "Audience to whom shareholder presented his demands, president director and *general counsel of corporation*, was not authority comparable to board of directors, and thus it was not abuse of discretion to conclude that the shareholder failed to comply with rule governing sufficiency of demand to be made prior to institution of derivative action." *Greenspun v. Del E. Webb Corp.*, C.A.9 (Nev.) 1980, 634 F.2d 1204.

potential derivative claim, including references to an alleged conflict of interest involving defense counsel, which issue has been disposed of by the Court. [D.E. 96].

23.   The March 12, 2012 Demand Letter provided *defense counsel*, as opposed to the management or shareholders of Cane I, until March 16, 2012 to respond to what is, essentially, a comprehensive accounting of all financial activity of all of the LLCs. Plaintiff fails to allege that the Demand Letter was refused or ignored, as required by Florida Statute §608.601(2). This, in and of itself, is fatal to a shareholder derivative suit.  Plaintiff's post-suit Demand Letter provided the LLC Defendants' counsel only four days to respond. A company must be given a reasonable time following demand *before* a derivative action may be filed. Failure to provide a company with a reasonable amount of time within which to respond to a demand makes the demand a nullity.[6]

---

[6] Held unreasonable to demand board file suit within **two weeks** of demand. *Smachlo v. Birkelo*, D.C.Del.1983, 576 F.Supp. 1439. Directors must be given time to act. *Recchion v. Kirby*, D.C.Pa.1986, 637 F.Supp. 1309, 1319, (given complexity of case, **two months** was not enough time); demand letter to board of directors insisting board respond within **ten days**, or suffer a derivative lawsuit, nullified demand. *In re E.F. Hutton Banking Practices Litigation*, D.C.N.Y.1986, 634 F.Supp. 265; Stockholder derivative complaint filed prematurely when directors given only **two and one-half months** to respond to demand and demand involved investigation and education to the issues. *Allison v. General Motors Corp.*, D.C.Del.1985, 604 F.Supp. 1106;, derivative action filed **three days** after notice of shareholders' demand properly dismissed since three days was not reasonable time for shareholders to allow corporation to respond to demand.  *Mills v. Esmark, Inc.*, D.C.Ill.1981, 91 F.R.D. 70, 73.

24.    Florida Statute §608.601(2) requires a plaintiff, as a condition precedent of bringing a derivative action, to *"allege … that the demand was refused or ignored."*

25.    Plaintiff's March 12, 2012 Demand, made five months *after* filing the lawsuit, fails to comply with this pre-suit requirement of Florida Statute 608.601(2). Courts vigorously enforce the pre-suit demand requirement and will dismiss derivative actions when plaintiffs do not comply. The reasoning for this requirement is persuasively articulated in *Grossman v. Johnson*, 674 F.2d 115 (1st Cir. 1982). There, defendants moved to dismiss a derivative complaint, asserting a failure to comply with the demand requirements of Rule 23.1.[7] The District Court dismissed the derivative action for lack of pre-suit demand. The dismissal was affirmed on appeal.

> The final question is whether plaintiff's post-litigation demand cured his failure to make one before beginning the action. Rule 23.1 specifically calls upon the complaint to show that demand was made or was properly excused; there is no provision for thereafter remedying an omission in the same suit, especially after the defendants have moved to dismiss because of the absence of a demand. The terms of the Rule have generally been followed by other appellate courts. Lucking v. Delano, 117 F.2d 159, 160 (6th Cir. 1941) ("Obviously the filing of the complaint cannot be regarded as a demand to sue, for by starting the action (plaintiffs) have usurped the field"); Shlensky v. Dorsey, 574 F.2d 131, 141-42 (3rd Cir. 1978) ("The contemplated showing of demand made upon the directors

---

[7] In *Grossman*, the District Court suggested that it might be advisable for plaintiff to send a demand letter to the directors specifying his position. The District Court then stayed the action. *Grossman v. Johnson*, 674 F.2d 115, 118 (1st Cir. 1982).

after the filing of the shareholders' derivative complaints could not have satisfied the demand requirements of the rule"); *Galef v. Alexander*, 615 F.2d 51, 59 (2d Cir. 1980) ("Rule 23.1 * * * is essentially a requirement that a stockholder exhaust his intracorporate remedies before bringing a derivative action").

 *In re Kauffman Mutual Fund Actions*, supra, 479 F.2d at 263, we said that "to be allowed, *sua sponte*, to place himself in charge without first affording the directors the opportunity to occupy their normal status, a stockholder must show that his case is exceptional," i.e. that demand is excused (emphasis added). The same postulate was expressed in *Heit v. Baird*, supra, 567 F.2d at 1162 (n.6): "The purpose of the demand requirement is, of course, to require resort to the body legally charged with conduct of the company's affairs before licensing suit in the company's name by persons not so charged" (emphasis added). *Grossman v. Johnson*, 674 F.2d 115, 125 (1st Cir. 1982).

26.     Plaintiff has affirmatively averred that counsel for the LLC defendants <u>has</u> responded to the Demand Letter, advising that the LLCs were investigating the claims. [D.E. 95, N]. Plaintiff has thus pleaded that a derivative action may not be maintained. Plaintiff has likewise pleaded lack of reasonable cause to institute a derivative suit by his reliance upon a *post-suit* Demand Letter which is a nullity. There can be no reasonable cause to institute a derivative suit when a plaintiff affirmatively pleads that both conditions precedent to instituting a derivative claim are absent.

27.     Plaintiff has made three unsuccessful attempts to comply with the strict pleading requirement of providing a pre-suit derivative demand and a refusal

to respond to that demand. At some point, Cane I should be entitled to finality on this issue.

E.   **Derivative Claims – Plaintiff Must Be "Similarly Situated" To Other Members And Must Be A Fair And Adequate Representative**

28.   If the Plaintiff satisfied the demand requirements stated above, which Plaintiff has not, there is an additional two prong test a derivative plaintiff must satisfy. There must be other "similarly situated" members or shareholders whose interests are to be championed by Plaintiff.[8] Plaintiff fails to satisfy this prong. Plaintiff is a representative of one - himself. Plaintiff may not purport to act on behalf of the balance of the Cane I Members, none of whom are similarly situated, and all of whom have rejected Plaintiff's proposed role. This, alone, requires dismissal of the derivative components of SAC.

29.   The second prong of the test is the requirement that Plaintiff must "fairly and adequately" represent the interests of his similarly situated members or shareholders. Where a litigant's interests are *"... inimical to the interests of the shareholders," that person is "an improper party" to maintain a derivative action.*

---

[8] *Kuzmickey v. Dunmore Corp.*, 420 F.Supp. 226 (D.C. Pa. 1976) ("These affidavits make it readily apparent that plaintiff does not represent anyone but herself for there are no other shareholders who are "similarly situated" … While I recognize it is not necessary in a derivative action that the plaintiff have the support of all other minority shareholders … here plaintiff has no support at all. It seems to me that language of Rule 23.1 is clear that a derivative action may not be maintained unless the plaintiff represents "interests of shareholders" other than herself. If a derivative action could be maintained by a single non-representative shareholder, this language would be unnecessary." Id. 231.

*Adiel v. Electronic Financial Systems, Inc.*, 513 So.2d 1347 (Fla. 3d DCA 1987. *See also Bernstein v. Workers' Compensation Medical Centers, Inc.*, 755 So.2d 141 (Fla. 4th DCA 2000)(affirming dismissal of inadequate representative in derivative action after taking into account, among other issues, plaintiff's motivations in bringing suit).

30.    In order to be able to provide fair and adequate representation, there must be no conflict of interest that would affect the forcefulness of the prosecution, or there must be no antagonism between the plaintiff and other shareholders arising from differences of opinion concerning the best method to vindicate the corporate claim. 19 *Am. Jur. 2d Corporations* §2043.  As discussed *infra*, there is a conflict of interest, and there is antagonism.

31.    The concept of fair and adequate representation has been referred to as a fiduciary duty imposed upon the corporate representative. *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 549-550, 69 S.Ct. 1221, 1227, 93 L.Ed. 1528 (1949).

> … a stockholder who brings suit on a cause of action derived from the corporation assumes a position, not technically as a trustee perhaps, but one of fiduciary character. He sues, not for himself alone, but as a representative of a class comprising all who are similarly situated. The interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom, and integrity. And while the stockholders have chosen the corporate director or manager, they have no such election as to a plaintiff who steps forward to represent them. He is a self-chosen representative and a volunteer champion. *Id. 593.*

32.     Plainly put, as reflected by Declarations filed in support of the Motions to Dismiss FAC; Declarations to be filed in support of the Motions to Dismiss SAC; and even the Plaintiff's own pleadings, it cannot fairly be said that Plaintiff satisfies the requirement of being a fair and adequate representative of his fellow members. Nor can it fairly be said that on the record before the Court that Plaintiff can act as a fiduciary for the objecting Members.

33.     The requirement that the Plaintiff fairly and adequately represent the interests of similarly situated members requires a court to examine any indications that there are extrinsic factors which render it likely that the representative may disregard the interests of the class members. The court may take into account outside entanglements, and ulterior motives, that render it likely that the representative may disregard the interests of the other class members. In making this determination, the court may rely upon affidavits submitted by the parties. *Davis v. Comed, Inc.,* 619 F.2d 588, 593 (6th Cir. 1980).

34.     So too, the Court may consider, in addition to outside entanglements, whether the representative could conceivably use the derivative action as leverage in other litigation between himself and the corporation. *Blum v. Morgan Guaranty Trust Company of New York,* 539 F.2d 1388 (5th Cir. 1976) In *Rothenberg v. Security Management co., Inc.,* 667 F.2d 958 (11th Cir. 1982), the Court observed that "*[a] derivative suit can constitute a particularly effective weapon for purposes of obtaining a favorable settlement in other actions." Id. footnote 7).*

35.    Here, it is evident on the face of the pleadings, and the sworn Declarations, that Plaintiff is an improper party to bring a derivative action.  The antipathy between the Plaintiff and other members of Cane I, whom Plaintiff insists on leading, is palpable.

36.    The enmity that Plaintiff appears to have towards fellow Members is not simply reflected in the pleadings filed in this action, Plaintiff is actively pursuing his personal agenda against Feit and Flechner in their bankruptcy proceedings, some of which pleadings and exhibits have found their way into this action.

37.    Plaintiff is not without relief for any perceived wrongs suffered by him. Plaintiff's individual non-derivative claims predominate, (SAC, Counts V, V-A, VI, VII, and VII-A) Plaintiff has direct avenues of relief available to him even in the absence of the right to sue on behalf of the non-existent, similarly situated, members of Cane I.

38.    Plaintiff's interests are not aligned, and indeed are in direct conflict, with the interests of the other members of Cane I.  Each member of Cane I, excepting Feit and Flechner, have signed multiple Declarations vigorously objecting to the Plaintiff's purported forced representation of their interests.[9]

---

[9] Flechner and Feit, who own their membership interests with Wives, as tenants by the entireties, have not submitted Declarations, but Wives, who are members of Cane Burgers, LLC, have filed Declarations thereby accounting for 100% of the membership interests.

39.     As set forth in the Declaration of Louis Geller, the Plaintiff has a history of soured business relationships, not just with Feit and Flechner, as Plaintiff alleges, but also with Cane I and Cane II Member, Louis Geller, who was a former business partner/associate of the Plaintiff. Louis Geller's Declaration speaks directly to whether Plaintiff is likely to fairly and adequately represent the interests of the Cane I members.

a.  In the outside business entanglements that Plaintiff highlights in his First Amended Complaint, (Residential Home Loan Company) the Plaintiff was caught dipping into the till at the rate of $10,000 per week. (Declaration of Geller, ¶¶ 15-23).

b.  Plaintiff wrongfully diverted somewhere between $200,000 and $250,000 in this prior business relationship with Flechner, Feit, and Louis Geller. (Declaration of Geller, ¶ 25).

c.  When Plaintiff realized that the company in which he had a 25% interest had recovered the diverted funds from a closing, Plaintiff caused the company's bank account to be nearly emptied. Plaintiff had a check for $250,000 issued made payable to cash which he took. (Declaration of Geller, ¶¶ 27-28).

d.  After demand, Plaintiff eventually returned the misappropriated funds. (Declaration of Geller, ¶ 31).

e.  Plaintiff's conduct in cleaning out the corporate bank account almost forced the company out of business. (Declaration of Geller, ¶ 32).

f.  The last time Plaintiff sued a business entity in which he was partners with Geller, Flechner, and Feit; after two years of litigation, Plaintiff took a dismissal with prejudice, at the trial, and the court dismissed the remaining count against the company. (Declaration of Geller, ¶¶ 54-56).

g.  Plaintiff has numerous money judgments against him, totaling nearly half a million dollars. (Declaration of Geller, ¶ 38).

15

40.     Plaintiff seeks this Court's judicial imprimatur to force resistant members of Cane I to allow Plaintiff to speak, act and even legally bind the membership, notwithstanding the objection of all of the Members.

41.     Plaintiff makes much of the suggestion that the Declarations filed in support of the motions to dismiss FAC were executed *prior* to Plaintiff's Demand Letter, and *prior* to knowledge of the consequences that would result if Plaintiff were successful. [D.E. 95, page 32].

42.     The new Declarations filed in conjunction with the motions to dismiss SAC plainly state that the Declarants have been provided with a copy of the Demand Letter and a copy of SAC. Yet, with full knowledge of Plaintiff's allegations, the Members remain resolute. The Members still uniformly reject the prospect of the Plaintiff, against their will, injecting himself as their self-appointed champion.

43.     There are additional reasons why Plaintiff is not a fair and adequate representative. Plaintiff maintains that a purchase of an adjoining Five Guys territory to that owned by Cane I constituted a misappropriation of corporate opportunity (SAC, Counts I, I-A, and II). Plaintiff proposes that his counsel will act on behalf of Cane I, suing all those who participated in this theft.

44.     Plaintiff does not, however, reconcile how his counsel is going to address the Plaintiff's own wrongful conduct of buying the same competing Five Guys territory, (SAC ¶¶ Q-T) without disclosure to *all* of his fellow Cane I members. Rhetorically speaking, does Plaintiff propose that his counsel will also sue the

16

Plaintiff, and then defend the Plaintiff for Plaintiff's own theft of a corporate opportunity.

**F.    Plaintiff Has Not Pled A Derivative Claim Against Wives For Misappropriation of Business Opportunity (Count I-A)**

45.    Plaintiff has alleged the existence of a fiduciary relationship with Feit and Flechner which could support a claim for misappropriation of a business opportunity. [D.E. 95 ¶¶97-98, AA, 108].  Plaintiff has not, however, asserted the existence of a fiduciary relationship between himself and Wives. *"A fiduciary relationship is based on trust and confidence between the parties where 'confidence is reposed by one party and a trust accepted by the other ... '" Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So.2d 536,540 (Fla. 5th DCA 2003) (quoting *Quinn v. Phillips*, 93 Fla. 805, 113 So. 419, 421 (1927)).

46.    Plaintiff's sole allegation against Wives to support his claim against Wives for Misappropriation of Business Opportunity is that *"Feit, Flechner, and their Wives used* <u>common resources</u> *to manage the Root LLC and the progeny LLs, and they transferred hundreds of thousands of dollars between the Root LLC and the Progeny LLCs."* [D.E. 95, BB].

47.    This single allegation, the use of common resources, and inter-corporate transfer of funds, does not state a cause of action against Wives for Misappropriation of Business Opportunity.

**G.    Plaintiff Has Not Pled A Viable Derivative Claim For Civil Conspiracy (Count III-A)**

48.     A civil conspiracy requires: (a) an agreement between two or more

17

parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy. *Raimi v. Furlong*, 702 So.2d 1273 (Fla. 3rd DCA 1997), *quoting Florida Fern Growers Assoc., Inc. v. Concerned Citizens of Putnam County,* 616 So.2d 562, 565 (Fla. 5th DCA 1993); *Nicholson v. Kellin,* 481 So.2d 931, 935 (Fla. 5th DCA 1985).

49.    Plaintiff does not allege that Wives were part of *"an agreement between two or more parties … to do an unlawful act or to do a lawful act by unlawful means."* Hence, Count III-A does not state a cause of action.

### H.    *Plaintiff Has Not Pled A Direct Claim For Civil Conspiracy* - Count VII-A

50.    Plaintiff also fails to state a direct personal cause of action against Wives for conspiracy. Plaintiff makes two accusations against Wives, neither of which are factual.

a.  *"The Wives acted in concert with Feit and Flechner …."* (SAC, ¶SS)

b.  *"By extension of their husbands, Pamela Feit and Ilene Flechner had a peculiar power of coercion possessed by them by virtue of their combination, by virtue of their husband's controlling interest which an individual acting alone could not possess."* (SAC, ¶TT).

51.    The first allegation is a non-factual, non-specific, conclusory assertion that Wives did something, "acting in concert," to further the bad acts of their husbands.

52.     The second allegation is at best a conclusion, at worst simply confusing. Plaintiff asserts that Wives have powers of coercion. This coercion is asserted to be through *"extension of their husbands."* Wives' wrongful conduct is apparently having husbands who have "*peculiar power of coercion*" which "*an individual acting alone could not possess."*

53.     *"Peculiar Powers of coercion,"* whatever this may mean, through the medium of a third party, does not rise to the pleading requirement of alleging (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy. *See Raimi v. Furlong*, 702 So.2d 1273 (Fla. 3rd DCA 1997).

## I.     Plaintiff Has Not Pled A Direct Claim For Conversion – Count V-A

54.     The elements of conversion in Florida are: "(1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *Special Purpose*, 125 F.Supp.2d at 1099–1100, citing *Warshall v. Price*, 629 So.2d 903, 904 (Fla. 4th DCA 1993), rev. den., 641 So.2d 1346 (Fla.1994). *Estetique Inc. USA v. Xpamed LL*C, 0:11-CIV-61740, 2011 WL 4102340 (S.D. Fla. 2011).

55.     Count V-A alleges none of the elements necessary to state a cause of action for conversion. Instead, Count V-A has made a single allegation, and  not even a factual allegation:

a. *"The Wives acted in concert with Feit and Flechner to reduce and to convert Starkes' membership interest in [Cane I] by 17.2%."*

56.    Plaintiff does incorporate into Count V-A, the 95 numbered paragraphs from the general allegations, and further incorporates the allegations of Count V. This illustrates the difficulties that arise when a party incorporates all of the general allegations, and the allegations of other counts.

57.    The alleged wrongful acts of Wives, the act of *"acting in concert,"* are not factual allegations sufficient to withstand a motion to dismiss.  Not a single element necessary to support a claim for conversion has been alleged.

**WHEREFORE**, for all of the reasons and citations of authority set forth above, Plaintiff's Second Amended Complaint[10] should be dismissed.  Wives further request, pursuant to this Court's inherent authority, that an award of attorneys' fees be entered in favor of Wives.

Respectfully submitted,

By:     /s/ Scott A. Silver
SCOTT A. SILVER, ESQ.
Fla. Bar No.: 0343277
**SILVER & GARVETT, P.A.**
18001 Old Cutler Road, Suite 600
Miami, Florida 33157
Tel:  305-377-8802; Fax: 305-377-8804

---

[10] The parties are five days away from the deadline for joinder of additional parties. The parties are less than 90 days away from the closure of fact discovery.  Six months after the commencement of this litigation, Plaintiff still is unable to state a legally survivable claim against Wives.  Wives are prejudiced by the continuing failure of Plaintiff to follow basic pleading requirements and to comply with the Court's prior order.

E-Mail:  ssilver@floridalegal.net

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 24th, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to counsel of record.  I also certify that a copy of the foregoing will be served on all counsel of record either via Notice of Electronic Filing transmission generated by the CM/ECF system or in some other manner authorized by the Federal Rules of Civil Procedure for counsel or parties not authorized to receive Notices of Electronic Filing from this Court.

By:　　   /s/ Scott A. Silver
　　　　 SCOTT A. SILVER, ESQ.
　　　　 Fla. Bar No.: 0343277
　　　　 **SILVER & GARVETT, P.A.**
　　　　 18001 Old Cutler Road, Suite 600
　　　　 Miami, Florida 33157
　　　　 Tel:  305/377-8802
　　　　 Fax: 305/377-8804
　　　　 E-Mail:  ssilver@floridalegal.net

21